UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No: 05 CR 472 -5 |
| | ) | Judge John W. Darrah |
| AMADOR HERNANDEZ | ) | |

## MEMORANDUM OPINION AND ORDER

On May 25, 2005, the United States of America (the "Government") brought a criminal indictment against Defendant Amador Hernandez and other alleged members of an international drug smuggling organization, charging them with conspiring to possess with intent to distribute and to distribute controlled substances in violation of 21 U.S.C. § 846. Presently before the Court is Defendant Hernandez's Motion to Suppress Evidence. The parties submitted briefs; and on March 22, 2006, an evidentiary hearing was held, at which two Special Agents with the Federal Bureau of Investigations ("FBI") – Agents M. Lia Postada and David W. Fitzpatrick – and Defendant Amador Hernandez testified. For the reasons that follow, Defendant Hernandez's Motion to Suppress is denied.

## BACKGROUND

The Government's version of events, as provided through the testimony of Agents Postada and Fitzpatrick, is as follows:

Defendant Hernandez, who has a heart condition and diabetes, was arrested at his home at approximately 6:30 on the morning of May 26, 2005. Agent Postada previously knew of the Defendant's heart condition and diabetes from listening to court-authorized wire interceptions. When the Defendant was arrested, Agent Postada asked Defendant Hernandez whether he

1

needed to bring any medication with him; Defendant Hernandez indicated that he had the medications that he would need. At this time, Defendant Hernandez did not tell Agent Postada that he was suffering from chest pains, shortness of breath, or any similar condition.

Agent Postada, Defendant Hernandez, and his medications were then transported back to 219 South Dearborn, where Defendant Hernandez was later interrogated. During the ride, Defendant Hernandez did not complain about any illness.

Defendant Hernandez's interview did not begin immediately when Defendant Hernandez and the agents arrived at 219 South Dearborn. Agent Postada said that she asked Defendant Hernandez repeatedly about his diabetes condition. Agent Postada asked Defendant Hernandez if he had eaten breakfast. When Defendant Hernandez answered that he had not had breakfast, Agent Postada asked if he needed anything; Defendant Hernandez requested a soda, which he was provided.

Before questioning began, Defendant Hernandez was informed by Agent Postada that intercepted calls were going to be played for him. After the calls were played, Defendant Hernandez was informed of his *Miranda* rights. Agent Posada read aloud a Spanish-language version of the advice of rights; and Defendant Hernandez signed the form, waiving his *Miranda* rights. Defendant Hernandez was not questioned at any time before signing the waiver.

After the rights form was read and signed, questioning began and lasted from approximately 8:30 a.m. until 11:00 a.m. Both Agents Postada and Fitzpatrick testified that at no time before or during the interview did Defendant Hernandez complain of chest pains, shortness of breath, or other physical ailments. After the interview was concluded,

Defendant Hernandez was provided with a snack. At this time, Agent Fitzpatrick also held a conversation in English with Defendant Hernandez. At no time during this conversation did Defendant Hernandez complain about chest pains, shortness of breath, or other ailments.

Soon thereafter, at approximately noon, Defendant Hernandez was taken to the Metropolitan Correctional Center ("MCC"). Defendant Hernandez was not accepted when he arrived at the MCC. Agent Postada was informed that the MCC would not accept Defendant Hernandez because of the large number of medications that Defendant Hernandez brought with him. According to the Government, Defendant Hernandez was then taken to Michael Reese Hospital to assess his suitability for confinement. Defendant Hernandez was taken to the hospital in an official bureau vehicle, not an ambulance. Defendant Hernandez arrived at the hospital at approximately 2:30 p.m.

At the hospital, the agents were informed that because of Defendant Hernandez's pre-existing heart condition, Defendant Hernandez was admitted for observation. Defendant Hernandez was discharged the next day after his period of observation. Defendant Hernandez's medical records do not indicate that Defendant Hernandez suffered a heart attack and stated, "No evidence of an acute cardiopulmonary process." The records indicate that Defendant Hernandez complained about chest pains after his arrival at the hospital and said that his chest pains began three hours prior to his arrival at the hospital (or approximately 11:30 a.m.).

Defendant Hernandez also testified at the evidentiary hearing. Defendant Hernandez's version of events is as follows:

Defendant Hernandez informed the Special Agents, immediately upon his arrest (approximately 6:30 a.m.), that he was having chest pains. During his transportation to 219 South Dearborn, he told Agent Postada, "My chest is still hurting, and I'm starting to feel shortness of breath."

Defendant Hernandez further stated that he was not given anything to eat or drink (save a glass of water) and was not permitted to use the bathroom before and after his interrogation. Defendant Hernandez testified that, during the interview, he told Agent Postada, in Spanish, that he was having chest pains and shortness of breath. Defendant Hernandez said that Agent Postada stated that the interview would be done soon (although he noted that the interview was not done for over an hour). Defendant Hernandez said that he was not given his *Miranda* warnings until the conclusion of the interrogation. He stated that Agent Postada never told him that he had the right to have an attorney present. Defendant Hernandez also testified that Agent Postada put a book on top of the rights form, and all that he could see were the signature lines.

Defendant Hernandez stated that he made the complaints of chest pain two or three times during the interview and again when he arrived at the MCC. Defendant Hernandez stated that, once at Michael Reese Hospital, he went through a series of tests. Defendant Hernandez asserted that a doctor told the agents Defendant Hernandez had suffered a heart attack and needed surgery. Defendant Hernandez testified that he did not know why he did not have surgery at that time. Defendant Hernandez has not had surgery since his arrest.

## LEGAL STANDARD

A statement is not compelled within the meaning of the Fifth Amendment if an individual "voluntarily, knowingly and intelligently" waives his Constitutional privilege. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). "A confession is voluntary if, in the totality of the circumstances, it is the product of a rational intellect and free will and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will. Coercive [government] activity is a necessary predicate to the finding that a confession is not voluntary within the meaning of the Due Process Clause of the Fourteenth Amendment." *United States. v. Gillaum*, 372 F.3d 848, 856-57 (7th Cir. 2004) (*Gillaum*) (internal citations and quotations omitted). In applying the totality-of-the-circumstances test, a variety of factors may be considered, including but not limited to: whether the defendant was read his *Miranda* rights; the individual characteristics of the defendant (i.e., defendant's age, education, intelligence level, and mental state); the nature of the interrogations (i.e., duration, environment, access to restroom and food); and the conduct of the law enforcement officers (i.e, use of physical punishment). *Conner v. McBride*, 375 F.3d 643, 651 (7th Cir. 2004) (collecting cases).

"[W]hen a confession challenged as involuntary is sought to be used against a criminal defendant at his trial, he is entitled to a reliable and clear-cut determination that the confession was in fact voluntarily rendered. Thus, the prosecution must prove at least by a preponderance of the evidence that the confession was voluntary." *Lego v. Twomey*, 404 U.S. 477, 489 (1972); *see also United States v. Guerrero-Herrera*, 590 F.2d 238, 242 (7th Cir. 1978). When a defendant claims that his statement was taken in violation of his rights under *Miranda*, the government

5

need only prove the defendant waived his *Miranda* rights by a preponderance of the evidence. *Colorado v. Connelly*, 479 U.S. 157, 168 (1986).

## ANALYSIS

In support of his Motion to Suppress, Defendant Hernandez makes two allegations. First, Defendant Hernandez, whose first language is Spanish, alleges that, at the time of his interrogation, he was not fully advised of his rights, pursuant to *Miranda*. Second, he asserts that he did not give a knowing and voluntary waiver of his rights because he alleges that, at the time of his arrest, and with the knowledge of the interrogating FBI Special Agents, he was suffering from chest pains, shortness of breath, and other symptoms indicating a heart attack and was not provided with medical care until after the conclusion of the interrogation. In support of his position, Defendant Hernandez notes that, after the interrogation, he was taken to the MCC, where he was refused admittance because of his medical condition; then he was taken to Michael Reese Hospital, where he was examined and admitted for treatment of heart stress.

### *Miranda Waiver*

Here, based on the totality of the circumstances, the Government carried its burden of demonstrating that Defendant Hernandez voluntarily, knowingly, and intelligently waived his rights by a preponderance of the evidence. First, Agent Postada's testimony was credible regarding the fact that Defendant Hernandez was read his *Miranda* warnings. Further, Defendant Hernandez signed the advice of rights form; and Defendant Hernandez's testimony that the form was hidden under a book was not credible.

6

With respect to his individualized characteristics, Defendant Hernandez testified that: (1) he was 59 years old; (2) he reached the eighth grade in school; (3) he could read Spanish; (4) he could speak English "like 80 percent"; (5) he worked as a tailor for 30 years; and (6) he had never been treated for a mental defect. These individualized factors, taken together, join to satisfy the Government's burden. Lastly, the interrogation conditions – specifically that the interview lasted no more than 2 ½ hours and the testimony by the agents that Defendant Hernandez was given access to food, liquids, and restroom facilities – weigh in favor of denying Defendant Hernandez's motion to suppress the statements.

*Voluntariness*

Defendant Hernandez asserts that even assuming, *arguendo*, that his waiver was made knowingly, he asserts that it was not made voluntarily because he was suffering from chest pains during the interview. A heart condition, by itself, does not render a confession involuntary. *See e.g., United States v. Hocking*, 860 F.2d 769, 774 (7th Cir. 1988) (overruled on other grounds). Again, here, the Government has met its burden. Both Special Agents testified that Defendant Hernandez did not complain of chest pains or shortness of breath, and Defendant Hernandez was not transferred to the hospital *via* an ambulance. Agent Postada testified that she had discussed Defendant Hernandez's diabetes condition with him. The medical records also do not support Defendant Hernandez's claim that he suffered a heart attack. Nor has Defendant Hernandez submitted any other evidence in that regard other than his own testimony. Lastly, the medical records reveal that Defendant Hernandez stated that his chest pains began approximately three hours before his arrival at the hospital at 2:30 p.m. (i.e., at 11:30 a.m), which contradicts his testimony at the suppression hearing that his symptoms began as early as 6:30 a.m.

7

Thus, taken in its totality, the Government met its burden by a preponderance of the evidence.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress is denied.

Dated: April 27, 2006

JOHN W. DARRAH
United States District Court Judge